16cv5420

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Rendell Robinson

_____

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

RECEIVED
SDNY DOCKET UNIT
2017 APR -4  AM 10: 42

-against-

Gerald Tillotson, Glenn J. Trombly,
John M. Conklin, Steven M. Welroch,
Orazio A. Bucolo Jr,
William A. Lee, Gertrude C.
Clerry, "See attached"

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

**COMPLAINT**
under the
Civil Rights Act, 42 U.S.C. § 1983
(Prisoner Complaint)

Jury Trial: ☑ Yes ☐ No
(check one)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4 26 17

## I.  Parties in this complaint:

A.  List your name, identification number, and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff    Name    Rendell Robinson
            ID #    07A6175
            Current Institution    Five Points Correctional Facility
            Address    State Route 96  P.O. Box 119
            Romulus   New York  14541

B.  List all defendants' names, positions, places of employment, and the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant No. 1    Name _Gerald Tillotson_    Shield # _____
Where Currently Employed _NYS DOCCS. Green Haven Corr. Facility_
Address _594 Route 216_
_Stormville    New York    12582_

Defendant No. 2    Name _Glenn J. Yohn_    Shield # _____
Where Currently Employed _NYS Docs. Green Haven Corr. Facility_
Address _594 Route 216_
_Stormville    New York    12582_

Defendant No. 3    Name _John H. Franklin_    Shield # _____
Where Currently Employed _NYS Docs. Green Haven Corr. Facility_
Address _594 Route 216_
_Stormville    New York    12582_

Defendant No. 4    Name _Steven N. Wilroth_    Shield # _____
Where Currently Employed _NYS Docs. Green Haven Corr. Facility_
Address _594 Route 216_
_Stormville    New York    12582_

Defendant No. 5    Name _Orazio A. Bucolo_    Shield # _____
Where Currently Employed _NYS Docs. Green Haven Corr. Facility_
Address _594 Route 216_
_Stormville    New York    12582_

## II.    Statement of Claim:

State as briefly as possible the facts of your case.    Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.    In what institution did the events giving rise to your claim(s) occur? _Green Haven_
_Correctional Facility_

B.    Where in the institution did the events giving rise to your claim(s) occur? _Psychiatric Unit_
_Also known As: Residential Crisis Treatment Prevention (R.C.T.P)_
_And the Special Housing Unit (S.H.U.)_

C.    What date and approximate time did the events giving rise to your claim(s) occur? _July 3rd_
_2013 At Approximately 10:30 A.M.  And July 10 2013_
_Through 15th and 19th Until  August 23  2014_

Full name(s) of the defendant(s) Continued :

Anthony J. Annucci ,     Joseph Bellnier , Albert Prack

and Vernon N. Fonda

Parties in this Complaint Continued :

Defendant No. 6   Name : William A. Lee

     Where Currently Employed : NYS Docs : Green Haven Corr. Facility

          Address : 594 Route 216
               Stormville, New York 12582

Defendant No. 7   Name : Gertrud C. Ellett

     Where Currently Employed : NYS Docs : Green Haven Corr. Facility

          Address : 594 Route 216
               Stormville, New York 12582

Defendant No. 8  Name : Anthony J. Annucci

Where Currently Employed : New York State Department of Corrections
& Community Supervision

Address : The Harriman State Campus - Building 2
1220 Washington Avenue
Albany, New York 12226-2050

Defendant No. 9  Name : Joseph Belanger

Where Currently Employed : New York State Department of Corrections
& Community Supervision

Address : The Harriman State Campus - Building 2
1220 Washington Avenue
Albany, New York 12226-2050

Defendant No. 10  Name : Albert Prack

Where Currently Employed : New York State Department of Corrections
& Community Supervision                                      See Attached

Address: The Harriman State Campus - Building 2
1220 Washington Avenue
Albany, New York 12226-2050

Defendant No. 11 Name: Vernon N. Bugh

Currently Employed by: New York State Department Homeless
& Community Supervision

Address: The Harriman State Campus - Building 2
1220 Washington Avenue
Albany, New York 12226-2050

VI. Previous Lawsuits Continued:

I. Parties to previous Lawsuit:

Petitioner: Rendell Robinson
Respondent: Anthony Annucci, Acting Commissioner
of the New York State Department of Corrections
And Community Supervision.

2. Court: Supreme Court of the State of New York
County of Dutchess

3. Index Number: 1044/2014

4. Name of Judge Assigned to Your Case: Hon. Denise M. Watson
Acting Supreme Court Justice

5. Approximate date of filing lawsuit: Feb. Mar. 2014

6. Is the Case Still Pending: On October 16, 2014
the Petition pursuant to the Article 78 of the CPLR,
seeking reversal of Tier III inmate Disciplinary held of
Green Haven Correctional facility, which decision was rendered on
August 23, 2013

V2. Previous Lawsuits Continued:

2. Parties to Previous Lawsuit

Plaintiff: Rendell Robinson

Defendants: James Taylor, Jody Cox, John Joyner, Mr.
William Labounty, Rickie Therrien, Leda Reyaud,
Donald Quinn, Craig Goodman, Kimberly Lipka,
Stephen North, David Keichman,

The Previous Lawsuits continued:-

Parties to Previous Lawsuits Continued: Defendants

Jason Cuttett, Andrew Blake, Robert Lejada
Zachary Bonner, Stephen Ashworth, Nazem Alsaiej,
Abdo Al Saeizi, Bashir Al Saeizi

1. Plaintiff: Kendrick Robinson

Defendant: The City of New York, Et Al.

2. Court: United States District Court, Eastern District of New York

3. Docket of Index number: 10-CV-7947 (ARR

4. Name of Judge Assigned to Case: Roanne L. Mann

5. Approximate date of Filing Lawsuit: 2010

6. Is the Case Still Pending? No

7. What was the result of the Case? The Case
Was Settled In 2012

Address: The Harriman State Campus ~ Building 2
1220 Washington Avenue
Albany, New York 12226-2050

Defendant No. 11 Name:

Formerly Employed by: New York State Department of Corrections
& Community Supervision

Address: The Harriman State Campus ~ Building 2
1220 Washington Avenue
Albany, New York 12226-2050

VI. Previous Lawsuits Continued:

Have You filed other lawsuits in State or Federal Court dealing
With the Same facts involved in this action? : Yes

1. Parties to Previous lawsuit:

Plaintiff: Kendall Robinson

Defendant:

Respondent: Anthony Annucci

Respondent: Acting Commissioner of The New York State Department
of Corrections And Community Supervision

2. Court; if Federal Court, name the district; if State Court, name the County

Supreme Court of the State of New York, County of Dutchess

3. Docket or Index Number: Index No. 1044/2014

4. Name of Judge assigned to your Case: Hon. Denise N. Watson, Acting Supreme Court Justice

5. Approximate date of filing Lawsuit: 2014

6. Is the Case still pending: On October 16, 2014 the case was transferred to the Supreme Court of the State of New York Appellate Division; Second Department Under Docket No. 2014-09907 Where the Case is Still Pending

The Case is pursuant to Article 78 of the CPLR seeking reversal of a Tier III inmate disciplinary hearing held at Green Haven Correctional Facility Where decision was rendered on August 23, 2013

**D.**     **Facts:** I was being admitted into the facility's Office of Mental Health (O.M.H.) Carvellian Unit Observation Suicide Watch also known as an Residential Crisis Treatment where inside of OBU Tank No. 2 Area Supervisor Sergeant Steven M. Walrath and Correction Officer Gerald Tillotson and Glenn J. Tromly were present. I was told by C.O. Tillotson to face the wall and to place both of my hands onto the wall "to undergo a strip frisk." I was then instructed to remove my clothing items (shirt, footwear, pants, socks & boxer shorts) one by one and to hand each to C.O. Tromly, and then to place my hands back onto said wall and remain facing the wall. I complied with all said instructions that I were given to me. Once I became completely "naked" and was facing the wall with both of my hands being placed on the wall, I was attacked by (See Attached)

> *(Margin labels:)*
> **What happened to you?**
> **Who did what?**
> **Was anyone else involved?**
> **Who else saw what happened?**

## III.     Injuries:

If you sustained injuries related to the events alleged above, describe them and state what ~~medical treatment, if any, you required and received.~~ *physical injuries.*

Fractured Nose with Deviated Nasal Septum

Head Head Injury Concussion

Mouth Injury(s)                                   (See Attached)

## IV.     Exhaustion of Administrative Remedies:

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Administrative remedies are also known as grievance procedures.

**A.**     Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

Yes ✓   No ____

II. Statement of Claim Continued:

D. Facts (Continued)

C.O. Tillotson and C.O. Trombly. Where both Officers began striking me with closed fist punches and blows" to my head and facial area.

3.      The impact of said closed fist punches and blows. Caused me to fall on to the floor of said Bullpen "No. 1. I began to yell out for help by saying exactly such "Help" "Help" "Help" in a "really loud tone of voice. C.O. Tillotson "then "began" Choking me" by placing his hand around my throat/neck and squeezing "hard with force-pressure.

4.   Next, Correction Officer John H. Conklin intered the tank "saw" what Tillotson and Trombly were doing to "me" and he too began punching me in my head and facial area, with closed fist striking blows!

5.  I "really began to fear for my life at this point", because they "would not "let-go" off of me.

6. Correction Officer Tillotson took his hand from around my said throat/neck and resumed striking and punching me with closed fist blows. I then began saying, I Quote: "Please Don't Kill Me", "Please Don't Kill Me" to these officers; as they were beating me.

7. These Three (3) said Correction Officers Continued to beat, Jump and physical assault me with Excessive Force as I, practically begged for my life, by said saying "Please Don't Kill Me" "Please Don't Kill Me" to these officers. Said chief Supervisor - Correction Sergeant Steven M. Wolroth remained Present inside of the tank as Correction Officers Gerald Tillotson, Glenn J. Trombly and John H. Conklin beat, Jumped and physical assaulted me and failed to intervene to protect me from harm and serious danger.

8. When Tillotson, Trombly and Conklin finally Ceased assaulting me, I was left said "Picked laying on my back" on the floor of the tank and "bleeding". Initially I did not know that I was bleeding and that my mouth was full of blood. I Just felt something in my mouth as the assaulting Correction Officers and Sgt. Wolroth were Exiting the tank. Where I spit what was

in My Mouth "out" into the air. Which was and or happened to be a glob or blood. Which landed on a plexy-glass window directly across from the door of the tank. Said Nyarocco Staff Exited the tank and Closed & locked the door of the tank, thus locking Me inside of the tank.

9.    Sometime there after the incident a different group of Correction officers and a Correction Sergeant returned to SHU tank No. 2 and took photos of Me, Photos of the tank with My loss of blood being Captured and photos of the Plexy glass window out Side of the tank where My loss of blood landed.

10.   Then Sometime thereafter Said photos were taken Lieutenant Orazio A. Bucolo appeared outside of SHU tank No. 2 where he told Me that "Medical" was on their way to Come See Me and instructed Me to tell Medical that Nothing happened to Me and that I had no injures. I feared for My life that if I told Medical What happened and reported injures. That I would be beaten again where they would Kill Me. Therefore When Medical Came I followed Said Lt. Bucolos instructions and told them that nothing happened to Me and that I didn't have any injures.

Case 7:16-cv-05420-NSR-LMS   Document 18   Filed 04/26/17   Page 15 of 25

11. Against doctors Pentiveena and Oliver, for Green Haven Correctional Facility were the Medical Craff ⌈Employed⌉ by ⌈My Docc6⌉ whome, Came to the tank to See Me and Asked Me the questions of (1) What happened(?) and (2) do you have any injuries? Where I said Told them that (1) Nothing happened to Me and (2) I didn't have any injuries.

12. Both said doctors "Examined Me" and Observed My need for further Medical Attention, in which the Facility's hospital was Unequipped to handle. Therefore said doctors ordered for Me to be taken to an Emergency Room outside of My Docc6, to a Community hospital better Suited for the Treatment My injuries needed.

13. As I was getting dressed to be taken to said Outside Emergency Room hospital said Lieutenant Bucolo "Again" instructed Me to not tell the outside Emergency Room hospital Craff What happened to Me and to not Report any injuries. I Continued to Remaine in fear for My life and thought that I Would be Killed, if I did not follow "Lieutenant Bucolos" said instructions.

14.    ~ Was taken to Putnam Hospital Center ~
Emergency Department at 670 Stoneleigh Avenue
Carmel, New York 10512    in a "NYS Decce" "Van"
a Correctional Sergeant Bonita and Correctional Officers
Peters and Cruz.   Where I refused to answer the
Emergency Rooms Medical Staff question(s) of What happened to Me
"Even When one of the receiving nurses told Me "That My
"nose Was broken" upon My arrival    by her just looking
at Me".   She also told Me that the Facility Green Haven
said I fell and asked Me What really happened (?)

15.    Wherefore further tests was Ordered and Conducted
upon Me a Cat-Scan.    Which revealed That I Sustained
several "injuries" diagnosed as follows:
(1) Nasal Fracture: break or Crack in the bones of the nose,

(2) Head Injuries, Adult: Concussion  bruise on the brain,
                          Inflicting Memory difficulties
                          Dizziness  Headaches  Double Vision
                          Seeing Giants  Depression  Tiredness
                          Weakness  Difficulty with Concentration
                          and hearing difficulties.

(3) Mouth Injury: Swelling  Cuts and Bruises to My
                  Upper lip and lower lip

16.   Within Hospital Center Emergency Department
additional Physicians Discharge Instructions and order
was a prescription for Amoxicillin [antibiotic] 500 M.G.
1 Capsule three times a day X 5 days.
Follow-up in 3-4 days with My doctor, Rest, Ice,
Motrin or Tylenol as needed for pain and to return to
ER for any Concerning Matters.

17.   At approximately 5:15 a.m. I was returned to Green
Haven Correctional Facility and placed in the Infirmary
Again on a Suicide Watch. After a nurse took My Vital Signs
examined Me where upon her Examination of My Infirmary admission
the injuries She observed Me to have was documented.
At approximately 10:15 a.m. Doctor Silvery called the Facility
and Ordered a prescription of Tylenol to be given to Me
for Pain.

18.   On July 5 2013 I was Seen by Doctor Bentivegna
where I requested to be discharged from the Infirmary
because I did not want to be held in the Infirmary,
I wanted to return back to My Cell in general population.
Doctor Bentivegna discharged Me from the Facility's Infirmary
but I did not return to My Said Cell in general population.
I was taken back to PSU tank No. 1 on the O.M.H. Battalight ~

Unit and told that I would remaine there until a
doctor from O.M.H. discharges Me.

19.     The "No Daco" Security Chief, Correction Officers, Sergeants,
Lieutenants, Captains, Deputy Superintendents and the Superintendent
himself, were all aware that My trip taken to the outside
hospital [reported that My nose/was broken] as a result
of this July 3 2013 "No Daco" Chief, Attack and
physical assault incident against Me, as described.

20. , When I was said returned to P.B.U tank no. 1.
The Deputy Superintendent for Security, Made rounds to
Sign the Log book for the R.C.T.'s. O.M.H. Battelight Unit.
Where he told Me that upon My discharge from the
Battelight Unit I would not be returning to My said
Cell of General isolation. He told Me that I was
going to be placed in the S.H.U. [Special Housing Unit ~
Solitary Confinement]. When I asked him What for(?)
He said for assaulting 2 of My officers. I replied
that I didn't assault anyone! He then told Me that
I Spit blood into the Face of his officer and that
was assault on Chief. I then told him that I did
not Spit blood or Spit period into any Chief's face.

21.      Being that the Correction Officers, Whom
         assaulted Me with Excessive Force broke My nose
         and inflicted Serious injuries to Me   the Area Supervisor
         at the time of the incident  Whom was said present
         as I was being beaten and failed to Intervene and
         protect Me from harm   Correction Sergeant Steven M. Wainroth
         "Fabricated an Inmate Misbehavior Report Against Me .
         Which was falsley written   in an attempt to these DOCCS
         Employees  to Cover up their Heinous Staff Misconduct Unlawful
         Actions had committed against Me as described" .  Where the
         Incident was also Fabricated and documented as a Use of Force
         incident .

22.      While I was said  being held on the Sattelight ~
         Unit, I Met with, O.M.H. Staff Alone   in private  Where
         I Then reported that Mts Doccs Correction Officers attacked
         and Inflicth assaulted Me  When I was being admitted
         into Psid tank no.1 .  Where I further reported that
         I Suffered a Concussion and they broke My nose as a result
         of the incident and where the Dept. for Security told Me
         that I was going to be put in the Special Housing Unit
         upon My discharge from the Sattelight Unit.  Falsely Alleging
         that I Spit Saliva in one of the assaulting officers face
         Which was an Alleged Assault on Staff .

23.       I told Reid O.M.H. Staff that I only Spit
I time which was into the air, as I layed on
My back on the Floor of the Tank and that I
did not Spit directly into the Face of Anyone and that
I did not assault Staff. That I was the Victem of
Staff escorting an inmate.   O.M.H. Staff told Me that
they did not have any control over Me, being Placed In
the O.H.U. and for Me to report What happened at the
Hearing [regarding the Inmate Misbehavior Report] that was
going to be held.   The O.M.H. Staff also told Me
That they were going to report My Claims of being assaulted
by Staff.

24.       On July 8, 2013, I was seen by Medical
where it was noted and or documented that I Still had
Physical injuries on My Head and Facial area.

25.   On July 10, 2013, I was discharged from the O.M.H.
Outpatient Unit and admitted into Green Haven Correctional
Facility's Overcial Housing Unit.

26.   On July 11, 2013, the following Mourning I was Served
Two (2) Tier II Inmate Misbehavior Reports, where both of
These Inmate Misbehavior Reports were Fabricated and Falsely written
To Inmate Rule violations of Charges I did not Comitt.

207.    The First Inmate Misbehavior Report Was Falsely
Written by Correction Sergeant Steven M. Wallath
Charging Me with Inmate Rule Violations as Follows:

Incident Date: 03 July 13

200.11    Assault on Staff       Incident Time: 10:30 hrs
204.11    Violent Conduct
106.10    Refusing Direct Order
115.10    Refused Search or Frisk
118.22    Unhygenic Act

The Description of incident Was Written and reads as follows:

On the above date and approximate time I Sgt. Wallath
Was Supervising the admission of inmate Robinson 07A6175 into
Psu Hunit L. During the Bris Frisk inmate Robinson Came off
the Wall in an aggressive and hostile Manner. Officers Tillotson
and Trombly began Struggling With Robinson. And Subsequently
brought Robinson to the Floor in an effort to gain Control
of the inmate. Officer Conklin Entered the Cell in an Attempt
to help Tillotson. And When he began to Kneel down to assist
Tillotson, inmate Robinson Spit blood at him. He hit Conklin
With his Spit on the Front Side of his Uniform by his pocket
and also on his Right Cheek by his eye. As Soon as Robinson
Was Under Control, all Staff Exited the Cell and Robinson remained
on the Cell Floor. Robinson Was then ordered by Me to receive

an injection by RMU Staff, to which he responded " Fuck You "!

End of Fabricated, Falsely Written Inmate Misbehavior Report

28.   The Second Inmate Misbehavior Report was Falsely Written by Correction Officer J. Smith, Charging Me with Inmate Rule Violations as follows :

Incident Date : 03 July 13

106.10   Refusing Direct Order

180.14   Urinalysis Testing Violation

The description of the incident was that when I was in Building No 1 on July 3 2013, after that Excessive Force incident, officer Smith chessed that he ordered Me to Submit to an Urinalysis testing and that I refused to Submit a Urine Sample.

29.   When I was Served these (2) Said Inmate Misbehavior Reports I Selected these Mr. Doe25 Employee Named on a Tier Assistance Selection Sheet Where Correction Sergeant N Yando, Whom was My third Selection, was the person that was assigned to be My Tier II Assistance

30.    On July 12 2013 Correction Sergeant N. Yando as My Tier assistance Met with Me at My location of Special Housing Unit Cell No. 25    where I requested to have two (2) Inmate Witnesses testify at My Tier III hearing for the Misbehavior Report of July 3 2013 . The two said inmate witnesses I requested were as follows:

(1)    J. Brown    Din # 08A4936   Whose Cell location was the Special Housing Unit at 42 Cell

(2)    A. Huertas    Din # 10A2351   Whose Cell location was General Population   A block , 3 Company , 336 Cell

On the day of the July 3 2013 Excessive Force Incident both of these inmates were being held on the O.M.H. Battalion Unit in the Sou tanks as well.  Inmate Brown was in Sou tank No. 6 and Inmate Huertas was in Sou tank no. 2   directly next to tank No. 1 where the Plbo Naco Staff assault on Inmate Incident Said Occured and took place .

I also requested the Video of Sou tank No. 1 and all superwork To & From Report   Unusual Incident Report . Use of Force Report regarding the Inmate Misbehavior Report .

32. On July 11, 2013 the Superintendent of Green ~ Haven Correctional Facility "William A. Lee" assigned "Gertraud C. Ellert" to Conduct A Tier III Superintendents' Hearing on Me for the two Misbehavior Reports issued on July 3, 2013.

32. On July 15, 2013 Inside the hearing Room of the Special Housing Unit at Green Haven Correctional Facility "Gertraud C. Ellert" Commenced the Tier III Superintendents Hearing for Approximately 10:30 a.m. Where the hearing record reflects that the "Gertraud C. Ellert" Stated that She Was designated to Conduct this hearing by Superintendent Lee pursuant to 7 NYCRR § 253.2 - 254.2. Where Two DOCCS Directive No. 4932 Title: Chapter V Standards Behavior & Allowances References 7 NYCRR Chapter V, Subchapters A and B.

33. However the hearing Officer, Gertraud Ellert did not and or failed to Conduct the Tier III Superintendents' hearing in Compliance With and or pursuant to 7 NYCRR

34. Where or no time prior to and or during the Superintendents' Hearing Was I afforded the following Procedural Due Process Rights:

- , To be Free From a Predetermination of Guilt by the hearing Officer

- To have Witnesses to testify For Me

- To documents and Evidence to be disclosed to Me

- To be Free From Unecessary delay(s) Of the hearing and Invalid, Untrue, False Pretence(s) Of hearing Extension Request.

- To have the hearing Conducted by an impartial, Unbiased, Unobjective, and Ethical hearing Officer.

- To Sufficient and non-Conflicting Evidence or Testimony

35. The hearing Officer Showed a Predetermination of guilt by Making Statements Through out the Superintendents' hearing Such as Follows :

A. You Spit on Officer Conklin

B. You Came off the Wall in an aggressive Manner, Where Use Of Force was necessary

C. You assaulted Officer Conklin by Spitting on him," and

D. You refused to give Officer Smith a Urin Sample