UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/27/18

RENDELL ROBINSON,

       Plaintiff,

  -v-

GERALD TILLOTSON; GLEN J. TROMBLY; JOHN H.
CONKLIN; STEVEN M. WALRATH; ORAZIO A.
BUCOLO; WILLIAM A. LEE; GERTRAUD C.
ELLERT; ANTHONY J. ANNUCCI; JOSEPH
BELLNIER; ALBERT PRACK; VERNON N. FONDA, X

       Defendants.

16 CV 5420 (NSR)

**<u>ORDER & OPINION</u>**

NELSON S. ROMÁN, United States District Judge

  Plaintiff Rendell Robinson, proceeding *pro se*, commenced this action on July 6, 2016

against Defendants[1] Gerald Tillotson, Glen Trombly, John Conklin, Steven Walrath, Orazio

Bucolo, William Lee, Gertraud Ellert, Anthony Annucci, Joseph Bellnier, Albert Prack, and

Vernon Fonda,[2] employees of the New York State Department of Corrections and Community

Supervision ("DOCCS"). In his Amended Complaint ("Complaint," ECF No. 18), Plaintiff alleges

that he is entitled to recover under 42 U.S.C. § 1983 for violations of the Eighth Amendment and

the Due Process Clause under the Fourteenth Amendment. Plaintiff also asserts state law claims

of assault, battery, false imprisonment, and both intentional and negligent infliction of emotional

distress. Presently before this Court is Defendant's motion to dismiss the Complaint pursuant to

the Federal Rules of Civil Procedure Rule 8 for failure to submit a short and plain statement of the

claim, 12(b)(1) for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim

---

[1] Plaintiff's suit is against Defendants in their individual and official capacities.
[2] There are inconsistencies with the spellings of Defendants' names in Plaintiff's Complaint and Defendants' motion for summary judgment. The Court applies the spelling used in the case caption.

upon which relief can be granted. For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

On July 3, 2013, Plaintiff was in Tank Number 1, ("Tank") awaiting admission into the DOCCS Green Haven Correctional Facility's ("Green Haven") suicide watch program. (Compl. ¶ 1.) Defendants Walrath, Tillotson, and Trombly entered the Tank and told Plaintiff to place both hands on the wall for a frisk. (*Id.*) They then instructed Plaintiff to remove his clothing and replace his hands on the wall. (*Id.* ¶ 2.) When Plaintiff complied, Defendants Tillotson and Trombly began striking him with closed fists. (*Id.* ¶ 2.) Plaintiff started yelling for help, and Defendant Tillotson began choking him. (*Id.* ¶ 3.) Then, Defendants Conklin entered the Tank and began punching Plaintiff in his head and face. (*Id.* ¶ 4.) Defendants Tillotson, Trombly, and Conklin continued to attack Plaintiff while he begged them to stop and while Defendant Walrath, still present, watched. (*Id.* ¶¶ 6–7.)

Defendants Tillotson, Trombly, and Conklin concluded their attack, leaving Plaintiff bleeding and naked on the floor. (*Id.* ¶ 8.) Plaintiff "felt something in [his] mouth" and spat out what turned out to be a glob of blood "into the air," which landed on the window across from the door. (*Id.*) Defendants left the Tank and locked Plaintiff inside. (*Id.*) Sometime later, a different group of Green Haven employees entered the Tank and took photographs of the Tank, Plaintiff, and the window with Plaintiff's blood and spit. (*Id.* ¶ 9.) Defendant Bucolo reviewed those photographs, and went to the Tank to inform Plaintiff that "Medical" was on their way to come see Plaintiff and to instruct Plaintiff "to tell Medical that nothing happened to [him] and that [he] had no injuries." (*Id.* ¶ 10.) Plaintiff complied because he feared that if he told Green Haven Medical what had happened, he could be beaten to death. (*Id.* ¶¶ 10–11.) Green Haven Medical

sent Plaintiff to an outside emergency room for further treatment. (*Id.* ¶ 12.) Before Plaintiff left Green Haven, Defendant Bucolo again told Plaintiff not to tell medical professionals about the incident and not to report any injuries, and Plaintiff complied. (*Id.* ¶ 13.) At the emergency room, Plaintiff was treated for a broken nose,[3] a concussion, and swelling and cuts to both the lower and upper lips. (*Id.* ¶ 15.) Plaintiff was returned to Green Haven and placed in the infirmary on a suicide watch. (*Id.* ¶ 17.)

On July 5, 2013, at Plaintiff's request, he was discharged from the Green Haven infirmary but was sent back to the Tank rather than back to his cell. (*Id.* ¶ 18.) There, Plaintiff was informed that he was going to be sent to the Special Housing Unit ("SHU") for assaulting an officer when he allegedly spat blood into the face of one of the officers during his beating in the Tank. (*Id.* ¶ 20.) On July 11, 2013, Plaintiff was served two Tier III Inmate Misbehavior Reports, both dated July 3, 2013. (*Id.* ¶¶ 26–28.) The first report, by Defendant Walrath, charged Plaintiff with: (1) assault on staff, (2) violent conduct, (3) refusing a direct order, (4) refusing a search or frisk, and (5) committing an unhygienic act ("Report 1"). (*Id.* ¶ 27.) The description in Report 1 stated Plaintiff was aggressive and struggled against Defendants Tillotson and Robinson, and that he spat blood at Defendant Tillotson, which landed on Defendant Conklin's uniform. (*Id.*) The second report, "falsely written" by a non-defendant corrections officer, charged Plaintiff with: (1) refusing a direct order, and (2) a urinalysis testing violation ("Report 2"). (*Id.* ¶ 28.) Report 2 stated that on July 3, 2013, after he had been beaten in the Tank, he was ordered to submit to a urinalysis testing and refused. (*Id.*)

Defendant Ellert, the Tier III hearing officer, commenced Plaintiff's hearing on July 11, 2013. (*Id.* ¶ 31.) Plaintiff was assigned a Tier III assistant to help him prepare for his Tier III

---

[3] Plaintiff underwent surgery because of this broken nose on December 30, 2014. (Compl. ¶ 126.) He also suffers from chronic migraines, dizziness, facial pain, and chronic knee and neck pain. (*Id.* ¶ 128.)

3

hearing. (*Id.* ¶ 30.) As part of this preparation, Plaintiff asked for the video recording from the Tank on the day of the incident. (*Id.*) He also requested testimony from several corrections officers and that two inmates, Mr. Brown and Mr. Huertas, witnesses who were held in the tanks on the day of the incident be permitted to testify at his hearing. (*Id.*)

Plaintiff states that Defendant Ellert only allowed Mr. Brown to testify at the hearing, and that Mr. Huertas did not testify because his signature was forged on a declination to testify form. (*Id.* ¶¶ 40, 45–46, 67.) Plaintiff could tell that the signature was forged because Mr. Huerto "had said [sic] agreed to testify at this Superintendent's Hearing through [Plaintiff's] [T]ier [III] assistant." (*Id.* ¶ 46.) Plaintiff asked to call his Tier III assistant as a witness to testify about Mr. Huertas's signature, and Defendant Ellert denied his request, stating that she had spoken with Mr. Huerto during an adjournment and confirmed his refusal to testify. (*Id.* ¶¶ 67, 77.) Plaintiff believes that Defendant Ellert could not have spoken with Mr. Huerto, because Mr. Huerto was no longer located in the unit in which Plaintiff's hearing was being held. (*Id.* ¶ 78.)

Plaintiff also raises several other issues with his Tier III hearing. Defendant Ellert refused to ask one of his questions to Defendant Tillotson. (*Id.* ¶ 61.) Plaintiff presented his medical records as evidence, and Defendant Ellert "only read the first page," refusing to read the entire document into the record. (*Id.* ¶¶ 62–64.) Defendant Ellert refused to accept evidence of a log of urinalysis testing to support Plaintiff's claim that he did not commit the violations in Report II. (*Id.* ¶ 71.) Plaintiff was permitted to testify on July 22, 2013 and was asked about the incidents in both Report 1 and Repot 2. (*Id.* ¶¶ 82–85.) After several adjournments and extensions, including an extension granted on August 22, 2013 that Plaintiff was not informed of until August 23, 2018 Defendant Ellert rendered a decision finding Plaintiff guilty on all of the charges in Report 1 and Report 2 and sentenced him to twelve months in SHU from August 23,

2013 to August 23, 2014 and one year loss of good time and also imposed a $5.00 mandatory disciplinary surcharge. (*Id.* ¶¶ 89–94, 97.)

After hearing Defendant Ellert's verdict, Plaintiff wrote a letter to Defendant Lee, Superintended of Green Haven, asking him to review Defendant Ellert's determination. (*Id.* ¶ 100.) On September 19, 2013, Plaintiff wrote a letter to Defendant Fonda and described the July 3, 2013 incident and the alleged due process violations from his hearing, but the "letter was ignored." (*Id.* ¶¶ 108–09.) Plaintiff filed an appeal with Defendant Annucci, as acting Commissioner of DOCCS, and Defendant Prack responded on behalf of Defendant Annucci on November 1, 2013, affirming Defendant Ellert's decision. (*Id.* ¶¶ 101, 111.) Plaintiff filed an Article 78 claim in February 2014. (*Id.* ¶¶ 118–19.)

## LEGAL STANDARDS

### I. Motion to Dismiss

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. In considering a 12(b)(6) motion, the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). Nor must the Court credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*

Further, a court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

Where, as here, a plaintiff proceeds *pro se*, the court must construe the complaint liberally and interpret it to raise the strongest arguments that it suggests. *Askew v. Lindsey*, No. 15-CV-7496(KMK), 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016) (citing *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)). Yet, " 'the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law.' " *Id.* (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)).

Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (citation and internal quotations omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In assessing whether there is subject matter jurisdiction, the Court must accept as true all material facts alleged in the complaint, *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009), but "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d

247, 253 (2d Cir. 2000).

## II.     42 U.S.C. § 1983 Claims

Section 1983 provides that "[e]very person who, under color of any statute, ordinance,

regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the

United States ... to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating

federal rights elsewhere conferred by those parts of the United States Constitution and federal

statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v.

County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under § 1983, a plaintiff

must allege "(1) the challenged conduct was attributable to a person who was acting under color

of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S.

Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2

(S.D.N.Y. April 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Therefore, a

§ 1983 claim has two essential elements: (1) the defendant acted under color of state law, and

(2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory

rights, or his constitutional rights or privileges. *See Annis v. County of Westchester*, 136 F.3d

239, 245 (2d Cir. 1998); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y.

1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the

Constitution.").

## DISCUSSION

Defendants move to dismiss Plaintiff's due process claims and to dismiss certain

Defendants. (Defs.' Mot. to Dismiss, ECF No. 50.) Defendant also requests that any of

Plaintiff's surviving claims be dismissed without prejudice so that Plaintiff may file a second amended complaint that complies with Rule 8. (*Id.* pp. 2, 22.)

## I.     Fourteenth Amendment Due Process Claims

Defendants argue that Plaintiff fails to state a due process claim. (Defs.' Mot to Dismiss pp. 6–9.)

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  To state a procedural due process claim, Plaintiff must show "(1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process." *Proctor v. LeClaire,* 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted).

Prison discipline typically implicates a protected interest "only if the discipline imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (internal quotation marks omitted); *see Sandin v. Conner,* 515 U.S. 472, 484 (1995).  The Second Circuit has recognized that the "atypical and significant hardship" standard is "grounded on the idea that a conviction extinguishes liberty interests." *Benjamin v. Fraser,* 264 F.3d 175, 189 (2d Cir. 2001). "[S]erious prison discipline like . . . solitary confinement must meet 'the minimum requirements of procedural due process appropriate for the circumstances.' " *Willey v. Kirkpatrick*, 801 F.3d 51, 64 (2d Cir. 2015) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)).

These "minimum requirements" for due process in a disciplinary hearing include the right to advance written notice of the alleged violation, a fair and impartial hearing officer, a written statement of the evidence relied upon and the reason for imposing the disciplinary action, and the

right to call witnesses and present documentary evidence when not unduly hazardous to institutional safety or correctional goals. *Id.*; *Wolff*, 418 U.S. at 563, 566). The minimum requirements do not include the right for the inmate to cross examine witnesses. *Id.* (citing *Wolff*, 418 U.S. at 567). "Due process requires 'that there be some evidence to support the findings made in the disciplinary hearing.' " *Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir. 1992) (quoting *Superintendent of Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 457 (1985)).

Plaintiff had a liberty interest in remaining free from disciplinary confinement. *See Martin v. Oey*, No. 16-CV-717, 2017 WL 9511174, at *5 (N.D.N.Y. July 19, 2017) ("The prevailing view in this Circuit is that, by its regulatory scheme, the State of New York has created a liberty interest in remaining free from disciplinary confinement.") (quoting *Liao v. Malik*, No. 13-CV-1497, 2016 WL 1128245, at *4 (N.D.N.Y. Feb. 26, 2016)). Additionally, Plaintiff's sentence to SHU for one year imposed an atypical and significant hardship. *See J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) ("In the absence of factual findings to the contrary, confinement of 188 days is a significant enough hardship."); *Palmer v. Richards*, 364 F.3d 60, 65–66 (2d Cir. 2004) ("[W]e have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short—less than [ ] 30 days.").

Next, the Court must determine whether Plaintiff establishes a facially plausible claim that he was not afforded sufficient process before being deprived of his liberty interest. Plaintiff admits that he received written notice of the charges in Reports 1 and 2. (Compl. ¶¶ 27–28.) However, he argues that his hearing officer, Defendant Ellert, was biased against him, and he supports this conclusion with his general complaints about the hearing process and with certain statements made by Defendant Ellert during the proceedings. For example, when Plaintiff asked Defendant Ellert whether a certain corrections officer was coming to testify, Defendant Ellert

said "do you see him here?". (Compl. ¶ 95.) Also, before Defendant Ellert announced the hearing decision, Plaintiff said, "I would like to make some objections," and Defendant Ellert answered, "We've closed the testimony. You had time to do your objections, and now it's my turn." (*Id.* ¶ 96.)

Assuming Plaintiff's Complaint plausibly supports that Defendant Ellert was partial, Plaintiff still has not plausibly established a due process violation. Disciplinary hearing officers are "not held to the same standard of neutrality as adjudicators in other contexts." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996). Rather, hearing officers must not be so partial as to present a "hazard of arbitrary decision making." *Wolff v. McDonnell*, 418 U.S. 539, 571 (1974). Plaintiff's Complaint, interpreted liberally and on its face, did not plausibly support his conclusion that Defendant Ellert made an arbitrary decision. As described in the Complaint, Plaintiff was permitted to call witnesses, to provide his own statement, and to present documentary evidence of his injuries. (Compl. ¶¶ 40, 62, 82–85). Additionally, from Defendant Ellert's written statement of the evidence relied upon and the reason for the disciplinary action, it is clear that Defendant Ellert relied on written reports from Defendant Walrath and a non-defendant corrections officer.[4] (Hearing Disposition Ex. 6, ECF No. 2-5.) Defendant Ellert also relied on Defendants Conklin's and Trombly's verbal testimony. (*Id.*) Accordingly, while Plaintiff establishes a facially plausible claim that he was deprived of a liberty interest, his Complaint cannot plausibly support a claim that he was denied constitutionally sufficient process, even assuming the truth of the allegations and under a liberal interpretation.[5] Plaintiff's

---

[4] The Court takes judicial notice of this hearing decision, which was attached as an exhibit to Plaintiff's first complaint before he submitted the Complaint considered in this motion. Judicial notice may be taken of documents that the plaintiff either possessed or knew about in bringing the suit, or matters that are referenced in the Complaint. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013). Plaintiff knew about the decision, even attaching it to his previous complaint, and references the decision in his current Complaint. (Compl. ¶ 97.)

[5] Defendants also argue that Plaintiff is collaterally estopped from challenging his Tier III hearing determination because he previously challenged the determination in an Article 78 proceeding. (Defs.' Mot. to Dismiss, pp. 10–

due process claims are dismissed.

## II.    **Rule 8 Analysis**

Although *pro se* litigants enjoy the Court's "special solicitude," *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (per curiam), their pleadings must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. A complaint states a claim for relief if the claim is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (citing *Bell Atl Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To review a complaint for plausibility, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the pleader's favor. *Id.* (citing *Twombly*, 550 U.S. at 555). However, the Court need not accept "[t]hreadbare recitals of the elements of a cause of action," which are essentially legal conclusions. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Dismissal for failure to comply with Rule 8 is "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Jemmott v. N.Y. City Transit Auth.*, 660 F. App'x 62, 63, 65 (2d Cir. 2016) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (affirming the district court's dismissal of a complaint for Rule 8 because the complaint did not set out a summary of facts and relied on attached documents).

Here, although Plaintiff's Complaint is lengthy and at times onerous to read, the Court does not agree with Defendants that "any attempt to answer [the Complaint] would be unduly burdensome." (*See* Defs.' Mot. to Dismiss p. 22.) The true substance of the Complaint is not "well disguised." Plaintiff's Complaint is organized into different sections, including one for the facts and one for injuries, and Plaintiff describes the facts in chronological order. Moreover,

---

12.) The Court need not address this argument because the Court determines that Plaintiff failed to state a facially plausible claim for relief for deprivation of his Fourteenth Amendment due process rights.

Defendants were able to discern enough information from Plaintiff's Complaint to file this motion to dismiss both Plaintiff's due process claims and Plaintiff's Eighth Amendment claims against Defendant Bucolo. Therefore, Defendants' motion to dismiss Plaintiff's Complaint under Rule 8 is denied.

## III.  Defendant Orazio Bucolo

Defendants argue that Plaintiff fails to state a claim against Defendant Bucolo, specifically an Eighth Amendment claim, and is not entitled to relief under § 1983. (Defs.' Mot. to Dismiss pp. 16–17.)

The Eighth Amendment prohibits the imposition of "cruel and unusual punishments," U.S. Const. Amend. VIII, and precludes the "unnecessary and wanton infliction of pain." *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (internal quotation marks and citation omitted). To establish a constitutional claim of excessive force, a plaintiff must allege facts that satisfy both an objective and a subjective component. *See Hudson v. McMillian*, 503 U.S. 1, 8–10 (1992); *United States v. Walsh*, 194 F.3d 37, 49 (2d Cir. 1999). He must first show that the alleged wrongdoing was "objectively, sufficiently serious" or objectively harmful enough. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional right." *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). The plaintiff must also allege facts showing that the amount of force used was more than *de minimis*, amounting to conduct "repugnant to the conscience of mankind." *Whitley v. Albers*, 475 U.S. 312, 327 (1986); *see Hudson*, 503 U.S. at 9–10; *Walsh*, 194 F.3d at 49. A plaintiff must also satisfy the subjective element by showing that each official who used excessive force against him had a "sufficiently

culpable state of mind" by acting "maliciously and sadistically" thereby causing the "unnecessary and wanton infliction of pain." *Hudson*, 503 U.S. at 7–8; *see Farmer*, 511 U.S. at 835–36; *Blyden v. Mancusi*, 186 F.3d 252 (2d Cir. 1999).

Mere allegation of verbal abuse even if vile and objectionable, does not rise to the level of a constitutional violation and does not constitute a recognizable claim under 42 U.S.C. § 1983. *See Moncrieffe v. Witbeck*, No. 97-CV-253, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (allegations that corrections officer laughed at inmate not actionable under section 1983) (citation omitted); *Carpio v. Walker*, No. 95-CV-1502, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997) ("Verbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation."). Accordingly, 42 U.S.C.§ 1983 is not designed to rectify mere harassment or verbal abuse, such as name calling. *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986).

Plaintiff alleges that Defendant Bucolo reviewed photographs of Plaintiff's injuries and the Tank after Plaintiff's alleged beating and twice instructed Plaintiff to tell medical professionals, both internal at Green Haven and at the emergency room, that nothing happened and he had no injuries. (Compl. ¶¶ 10, 13.) Plaintiff states that he feared that if he did not comply, he would be beaten to death but offers no further support for this conclusion. (*Id.* ¶¶ 10–11.) Interpreting the Complaint liberally and to raise the strongest arguments that it suggests, Defendant Bucolo threatened Plaintiff. However, threats alone are not enough to support a facially plausible § 1983 claim for an Eighth Amendment violation. *See Green v. City of N.Y. Dep't of Corr.*, No. 06-CV-4978, 2008 WL 2485402, at *6 (S.D.N.Y. June 19, 2008) (holding that allegations of death threats without any indication that the threats would be carried out were

insufficient to establish an Eighth Amendment claim); *see also Moncrieffe*, 2000 WL 949457, at *3; *Carpio*, 1997 WL 642543, at *6. Plaintiff's claim against Defendant Bucolo is dismissed.

## IV.     Personal Involvement

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir.1991) (citations omitted); *Randle v. Alexander*, 960 F. Supp. 2d 457, 477 (S.D.N.Y. 2013) ("It is axiomatic that individual defendants cannot be liable for § 1983 violations unless they are personally involved with the alleged conduct.").

There are five categories of conduct that can establish the personal involvement of a supervisory defendant:

> (1) The defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). However, the Supreme Court has rejected the argument that a "supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). An inmate's allegation that an official ignored a written protest or request is insufficient to establish personal involvement. *Platt v. Inc. Vill. of Southampton*, 391 F. App'x 62, 65 (2d Cir. 2010) (holding that allegations that a supervisor ignored a letter protesting unconstitutional conduct was insufficient to establish that the supervisor was personally involved); *Jones v. Annucci*, No. 16-CV-3516(KMK), 2018 WL 910594, at *11 (S.D.N.Y. Feb. 14, 2018); *Alvarado*

*v. Westchester Cty.*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014); *Wingate v. Horn*, No. 07-CV-2521, 2009 WL 320182, at*2 (2d Cir. Feb. 10, 2009) (holding that defendants were not personally involved and not liable under § 1983 for their failure to respond to or investigate the plaintiff's letters concerning denial of his right to vote).

Interpreting Plaintiff's Complaint liberally, Plaintiff fails to establish a plausible claim that Defendants Annucci, Lee, Fonda, Prack, Ellert, and Bellnier were involved in violations of the Constitution. Plaintiff only states that he sent Defendant Annucci an appeal of Defendant Ellert's decision and that Defendant Annucci referred the appeal to Defendant Prack. (Compl. ¶¶ 101, 111.) This is insufficient to plausibly show Defendant Annucci's personal involvement. *See Sealy v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (holding that receipt of an appeal and a letter, and the act of referring the appeal, did not establish personal involvement of the defendant). Plaintiff also sent letters protesting his allegedly unconstitutional treatment to Defendants Fonda and Lee, but it does not appear that Defendants Fonda or Lee responded. (Compl. ¶¶ 100, 108–09.) These facts are insufficient to plausibly establish their personal involvement. *See Platt*, 391 F. App'x at 65. Plaintiff only includes Defendant Bellnier in the Complaint based on his position as Deputy Commissioner of DOCCS and does not allege any connection with a constitutional violation. (Compl. ¶ 142.) Regarding Defendants Ellert and Prack,[6] Plaintiff's claims against them are solely related to alleged due process violations from his hearing and, because Plaintiff's due process claims are dismissed *supra*, Plaintiff's Complaint

---

[6] Defendant Prack affirmed Defendant Ellert's decision, which Plaintiff claims was in violation of his due process rights. (Compl. ¶ 111.) District courts are split in the Second Circuit on whether affirming an allegedly unconstitutional disciplinary decision is personal involvement for the purposes of § 1983 liability. *Kimbrough v. Fischer*, No. 13-CV-100(FJS/TWD), 2016 WL 660919, at * 9 (N.D.N.Y. Feb. 18, 2016). Courts holding that this is sufficient to establish personal liability find that there is an ongoing violation, because the affirmer had the power to vacate the allegedly unconstitutional decision. *Thomas v. Calero*, 824 F. Supp. 2d 488, 509–10 (S.D.N.Y. 2011); *Delgado v. Bexio*, No. 09-CV-6899, 2011 WL 1842294, at *9 (S.D.N.Y. May 9, 2011). The Court need not proceed with this analysis, as Plaintiff's due process claims are dismissed.

does not plausibly allege personal involvement of Defendant Ellert and Prack.

Accordingly, Defendants Annucci, Lee, Fonda, Bellnier, Prack, and Ellert are dismissed from this action for lack of personal involvement.

## V.    State Law Claims

Defendants argue that Plaintiff's claims for damages arising out of state law assault, battery, false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress (Compl. 168–86) must be dismissed because the Court lacks subject matter jurisdiction, and they cite to New York Corrections Law § 24. (Defs.' Mot. to Dismiss pp. 17–18.)

Under New York Corrections Law § 24, a plaintiff cannot assert a civil action against correctional officers and employees of DOCCS, in their individual capacities, "for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee." N.Y. Correct. L. § 24. New York Corrections Law § 24 precludes " 'the assertion of claims against corrections officers [in their personal capacities] in any court, including the federal courts,' by designating the New York State Court of Claims as the only available venue to bring a claim for damages arising out the acts committed by corrections officers within the scope of their employment." *Rucano v. Koenigsmann*, No. 12-CV-00035 (MAD), 2014 WL 1292281, at *15 (N.D.N.Y. Mar. 31, 2014) (citing *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996)); *Ramos v. Artuz*, No. 00-CV-0149, 2001 WL 840131, at *6 (S.D.N.Y. July 25, 2001) (concluding that New York Corrections Law § 24 barred inmate's state law claims for negligence against DOCCS employees in their individual capacities); *Francis v. Fiacco*, No. 15-CV-00901(MAD)(ATB), 2016 WL 3448617, at *4 (N.D.N.Y. June 20, 2016) (barring pendent state claims, including state law false

imprisonment claim, as precluded by New York Correction Law § 24).

Defendants acted within the scope of their employment, and Plaintiff does not appear to allege that Defendants acted outside the scope of their employment. *See Francis*, 2016 WL 3448617, at *4; *Boyd v. Selmer*, 842 F. Supp. 52, 57 (N.D.N.Y. 1994) (dismissing a plaintiff's state assault and battery claims under New York Correction Law § 24 because it "has been well established that the actions of the defendants . . . arose as a result of the defendants discharging their duties as correctional officers"). Accordingly, Plaintiff's state law claims are dismissed for lack of subject matter jurisdiction.

## VI.    Immunity

Defendants claim that they are entitled to Eleventh Amendment immunity for Plaintiff's claims against them in their official capacities and that they are also entitled to qualified immunity for Plaintiff's claims against Defendants individually. (Defs.' Mot. to Dismiss pp. 17–21.)

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity," or unless Congress has abrogated the states' Eleventh Amendment immunity. *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* (internal quotation marks omitted). Here, the government has not waived its Eleventh Amendment immunity for any of Plaintiff's federal claims, see *Trotman v. Palisades Interstate Park Commission*, 557 F.2d 35, 39–40 (2d Cir. 1977), and Defendants, as state officials, are immune to Plaintiff's claims against them in their official capacities.

Turning to qualified immunity, Defendants assert qualified immunity as a defense to all of Plaintiff's claims. (Defs,' Mot. to Dismiss p. 18.) Plaintiff's only remaining claims are for relief under § 1983 for violations of the Eighth Amendment.

"The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.' " *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). Consequently, "qualified immunity shields . . . officials from suit 'unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct.' " *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "A right is clearly established when its contours ... are sufficiently clear that, at the time of the challenged conduct, every reasonable official would have understood that what he is doing violates that right." *Crawford v. Cuomo*, No. 16-CV-3466, 2018 WL 542578, at *1 (2d Cir. Jan 25, 2018) (quotations and citations omitted).

Typically, the defense of qualified immunity will "rest on an evidentiary showing of what the defendant did and why." *Lamzot v. Phillips*, No. 04-CV-6719 (LAK), 2006 WL 686578, at *8 (S.D.N.Y. Mar. 16, 2006) (citing *Curry v. City of Syracuse*, 316 F.3d 324, 334 (2d Cir. 2003)). However, on a 12(b)(6) motion the Defendants "must accept [a] more stringent standard." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). The "facts supporting the defense [must] appear on the face of the complaint," *id.* (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998)), and the motion must only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief," *id.* (quoting *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992)).

The right to be free from excessive force was well established at the time of the events giving rise to this action. *See Rodriguez v. McGinnis*, 1 F. Supp. 2d 244, 249 (S.D.N.Y. 1998) (discussing clearly established right to be free from excessive force). Additionally, Defendants do not currently assert[7] that "it would have been objectively reasonable to believe that the conduct alleged by [P]laintiff was permissible." *Id.* at 249. At this stage of the proceedings, the Court is required to accept Plaintiff's allegations as true and to draw all reasonable inferences in his favor, and it was not objectively reasonable for Defendants to hit Plaintiff with closed fists and to continue hitting him after he fell to the ground. Therefore, Defendants are not entitled to qualified immunity at this juncture.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the Complaint is GRANTED in part, DENIED in part. All claims against Defendants Bucolo, Lee, Ellert, Annucci, Bellnier, Prack, and Fonda are dismissed. All claims against Defendants Tillotson, Trombly, Conklin and Walrath in their official capacities are dismissed. Plaintiff's state law claims are dismissed without prejudice for lack of subject matter jurisdiction. Plaintiff's Eighth Amendment claims against Defendants Tillotson, Trombly, Conklin, and Walrath in their individual capacities remain.

The Clerk of Court is respectfully directed to terminate the motion (ECF No. 49) and to terminate Defendants Bucolo, Lee, Ellert, Annucci, Bellnier, Prack, and Fonda from this action. Remaining Defendants are directed to file an answer to the Complaint on or before October 12, 2018. The parties are directed to confer, complete, and submit to the Court the attached case

---

[7] Defendants assert that reasonable prison officials in Defendants' positions could have believed that the alleged actions did not violate clearly established constitutional rights, but this is in relation to Plaintiff's due process claims, which were dismissed.

management plan on or before October 31, 2018. The Clerk of Court is also directed to mail a copy of this Opinion and Order to Plaintiff at his address listed on ECF and show proof of service on the docket. This constitutes the Court's Opinion and Order.

Dated: September 27, 2018                    SO ORDERED:
      White Plains, New York

                                             NELSON S. ROMÁN
                                       United States District Judge

------------------------------------------------------------x

                                                    **CIVIL CASE DISCOVERY PLAN**
                              Plaintiff(s),          **AND SCHEDULING ORDER**

      - against -


                              Defendant(s).      _____ CV _____ (NSR)

------------------------------------------------------------x

      This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.    All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2.    This case [is] [is not] to be tried to a jury.

3.    Joinder of additional parties must be accomplished by _____.

4.    Amended pleadings may be filed until _____.

5.    Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.    First request for production of documents, if any, shall be served no later than _____.

7.    Non-expert depositions shall be completed by _____.

    a.    Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b.    Depositions shall proceed concurrently.

    c.    Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)


SO ORDERED.

Dated: White Plains, New York

_____

_____
Nelson S. Román, U.S. District Judge